First case on the docket today is Bd of Trustees of Rend Lake Conservancy District v. City of Sesser. Clause number 5-11-110. The party is ready to proceed. Mr. Wilson, you may do so. May I please the board? This appeal has been quite an education for me. I've read every reference to counterclaims in the Civil Practice Act and the Supreme Court rules, starting with 5-2-608, counterclaims in general. As I've read that, I've read the Jetman, forcible entry, distress for rent, four money claims, injunctions, judgments between parties, and finally Rule 222. I have not found one reference that limits the amount of damages in a counterclaim under any circumstances in the Civil Practice Act or the Supreme Court rules. The only references to limitations on damages are with respect to small claims and with respect to claims for which an affidavit is not filed indicating the damages are in excess of $50,000. We filed, that is the City of Sesser filed with their counterclaim, an affidavit indicating that the damages would exceed $50,000 and then proceeded to request the case be redacted. Now, as stated in 3, we had two rounds of that. We filed a motion to redact it. The court allowed the redacting. Then the court vacated that order. We filed a motion to reconsider the court order that it be redacted as an L case and then that order got vacated. What does the record say about, what do the trial court give us as reasons to vacate those orders? Your Honor, I don't recall there being anything in the record that says that other than Mr. Sanders had objected to the order having been issued. All right, so he, I mean there wasn't an argument, you just got a docket sheet or? That's true. Okay. Now, to just simplify things because this is a complex set of circumstances, what we're really talking about is comparable to a case where a doctor messes up the surgery, is bold enough to send the bill for $32,000 to the patient for non-payment. The patient decides, well, you know, I'm not pleased about this. I'm not going to pay the bill and I'm going to go get a lawyer. The patient gets a lawyer and files a counterclaim for $200,000. And the question before the court today, is the recovery limited to $50,000 because the doctor initiated the case as an L.M. case? We don't think so. I can't find anything that says that is so. Rule 222 applies to civil cases seeking money damages not to exceed $50,000. It basically says the rule does not apply in the event that an affidavit is attached to the claim. It applies to any civil action seeking money damages. It indicates that the initial pleading has to have an affidavit that the money damages do or do not exceed $50,000. As I stated earlier, the city assessor attached such an affidavit to the counterclaim stating the damages exceeded $50,000. Now, a civil action as referred to in Rule 222 we submit is a claim, a counterclaim. And further to that, under 5-2603, it seems clear that under form of pleadings that a counterclaim has the same dignity as a complaint or any other claim. So, again, our assertion is that if our affidavit of damages in excess of $50,000 is attached to our action, then we're entitled to recover in excess of $50,000. Section 5-2608 states any claim by one or more defendants against one or more plaintiffs, when so pleaded, shall be called a counterclaim. Well, you know, the word claim, the cause of action, and damages are used throughout all of the Civil Practice Act, and it doesn't differentiate between the claim and the damages and the counterclaim and the original complaint. It's really unusual that we couldn't find any law on this in the state of Illinois. And I guess that our position is this is so patently obvious that it never got to this stage before. There is a jury demand in this case, right? There is. And you're here on an order where the trial court said we're not going to let you re-docket this as an L case and we're going to limit your damages to $50,000. That's exactly right. So I take it where we're at now is if this case went to jury trial and a jury awarded $100,000 on the counterclaim, then the judge would cut it down to $50,000. And I believe that is the law. That's what he's saying. If indeed we had not filed that affidavit, we would be subject to having the judgment reduced to $50,000 because it's a true L case. But we filed the affidavit under Rule 222, and out of an abundance of caution, we asked twice that the case be re-docketed. And finally, the court entered this very short order that says it is therefore ordered that the counterclaim is limited to an amount not to exceed $50,000. That's the order that we're here on today. You know, I think that if the court would go on and look, and this is not in my brief, and I apologize for this. This is one of those epiphanies that I educate myself. It's timely and long, and I should have done that before we filed the original brief. But if you look at 512.176, which is judgment between parties, the Civil Practice Act clearly contemplates that there may be claims going both ways. And, in fact, it talks about set-off, one against the other, if required by either party. It goes on to say that 512.177 applies to multiple judgments when the judgments are rendered against both more than one party to a case and how the officer enforcing the judgment effectuates that set-off and how the satisfaction is done for the first judgment or the lesser judgment. It's just we think that it's clearly contemplated, and we also believe it leads to justice. You know, the law is supposed to be fair. Notwithstanding that we don't have a case that says this, it just needs to be fair. And this situation about the doctor that sues for $32,000 on a bill, that has to be the same amount that Green Lake sued Sess report. And then the patient comes back and says, I didn't pay the bill because my surgery was botched and my knee is messed up forever, and sues for $200,000 with a counterclaim. Well, should that counterclaim be limited just because the surgeon initiated the case as a mail-in case and had less than $50,000 worth of damages? We would assert no, and we obviously hope you agree with us. I don't know that I've got a whole lot more to say about this. There are very limited cases. The Massachusetts case comes the closest to this and basically says you can't limit the damages. But this is an opportunity for this court to take a stance on what the law in Illinois really is. All right, thank you, Mr. Wilson. Thank you. And Mr. Sanders? Good morning. Mr. Wilson, Mr. Taylor. I'm Larry Sanders. I represent the plaintiff, the Green Lake Conservancy District. The Conservancy District is a provider of drinking water to more than 160,000 people in southern Illinois. And one of our customers is the city of Sessor. The city of Sessor quit paying its bill in July of 2009 for the water that was provided. In January of 2010, the district sued on that account. A month prior, the city of Sessor had sued the Conservancy District on breach of contract. Judge Bob had refused to consolidate the two cases. Both cases were allowed to continue. One an L case, the other an LM case. The city voluntarily dismissed. The two cases are about the same subject matter, aren't they? No, they are not. Well, doesn't the city of Sessor claim that they quit paying because there was a problem with measuring the water? Their claim in their L case was that they quit paying to recover amounts that they alleged they overpaid years before. They said there was a problem with metering or whatever, though. Yes, but nothing about the bill that was currently being sued upon by the Conservancy District. Okay. And so they were both about water. Now, why did the trial judge refuse to consolidate the two? It's found that there was the ability, well, very clear, that an LM case has certain economics to it. They move quickly. There's a limited amount of discovery. And it's the power of the circuit courts to have small claims cases, LM cases, and L cases. But what's the purpose behind those classifications? What is the purpose? I think exactly as what we are saying is that they're based upon damages or alleged damages, that there is a reason for having expedited actions, actions that can be expedited by discovery and by the amount of time that you have to move the case forward. And so I think that is the crux of this matter. Judge Vaughan, who had both cases, both cases were before him, this circuit court judge felt that it was in the best interest to continue with these two cases. So the economy, the judicial economy, had already been considered by Judge Vaughan. And he believed that the best was so as not to prejudice either party, but to allow the one case to go forward expeditiously and the other one to go forward in its ordinary course that L cases would. And that is how they would have proceeded but for the voluntary dismissal by the city assessor of its case. And then, you know, if it's federal court where you might get into the whole discussion about mandatory counterclaims, then, you know, that's a whole different thing. But, of course, here they're permissible. And every cross-claim will be referred to as a counterclaim. And so in that regard, this counterclaim was permissive. The L case could have continued for the full amount that they were seeking on the breach of contract action. Judge Vaughan felt that, in fact, it should be two separate ones. Or if the voluntary decision, the permissive decision of the city assessor was to join in the LL case, then he exercised what he believed to be his authority to limit their damages to $50,000. Keep in mind, they still had, the city assessor still had that opportunity to continue with the L case. Now, the trial judge found it would be more expeditious to try two cases. He found that it was in the best interest of the litigants and the court to continue the two cases so that the one could go forward in the expeditious manner in that regard. Certainly, that is what circuit court judges are asked to do and what they do on a regular basis, as you all are familiar with. And so, but in that regard, you asked about a very good question, a very interesting question regarding the vacation of the orders. As Mr. Taylor was present, Mr. Wilson was not, he was very embarrassed, especially the second time, for having by air or having entered the redocketing order. It was presented to him as an uncontested order and he signed it, believing it to be an uncontested order. And then when I filed the motion for hearing on the motion to redock it, then he saw that it was contested and he expressed his embarrassment for having done that when he believed it to have been by agreement. So in that regard, I understand what the city is saying when it argues that a counterclaim filed after the expiration of statute of limitations should be allowed irrespective of the amount of damages. I get that. I understand that argument. And to tell you the truth, the city may be correct in that regard when there is a statute of limitations that expire during the pendency of the case. And that's an issue here? In other words, their claims go back beyond what the statute would be? No, they do not. And so that's why I say, and I didn't mean to offend Mr. Wilson when I called that a straw man, easy to knock down, because in fact it is not an issue here with regard to statute of limitations. He might not have felt any better if I called it a red herring to draw us off course in this action. And I do believe that that is the intention, is to draw us off course when the Supreme Court has given the course to be followed. And the course that the Supreme Court has given is that there are small claims cases. There are L.M. cases, and there's L. cases. And they have a difference of the discovery, and they have a difference of how they move through. And so it is my belief that either way, the course to follow has been set. It's been set by the Supreme Court. And the city is not prejudiced. The city is not prejudiced by having the choice of continuing for $50,000 in the L.M. case or simply filing an L. case for what it is that they claim to be the larger damages. What's the downside of there being two separate cases? You've kind of, Judge Stewart, you've kind of brought that up. And Judge Vaughn certainly has had the fact before them. The city says the downside is that the two cases are not judicially efficient and that the city, this comes out in the reply brief from the city, and the city may have to pay its water bill to the district a long time prior to having its claim against the district decided. Well, Judge Vaughn already took into account the judicially copied. He's the circuit judge in this matter. It's his docket that is going to be affected by these two cases. And quite frankly, it sounds to me like the city agrees with the district that forcing the district into an L. case will in fact delay the adjudication of the district's claim, the district's claim on the account. I ask this court that they not allow that delay, that the best course of action in this matter, in this matter, be what Judge Vaughn has done. And that is that they be, the L.M. case, be allowed to proceed in an expeditious manner, seeking where the damages will be limited to $50,000. In another case that may come before you, with regard to there being a statute of limitations that has expired, of which you'll find nothing in the briefs setting forth what statute of limitations expired or when it expired. It would have had to expire between July 13th of 2009 and January when the case was filed, less than six months or approximately six months. There is no showing that there was any statute of limitations blown in that period of time. And so I ask that you affirm the order limiting the damages to the counterclaim or, in the alternative, dismiss the whole counterclaim and let it proceed, let them refile and proceed under an L. case. You've got two basic causes of action. Yes, sir. You've got two basic causes of action. You've got an account that's being sued on. Yes, sir. It's through meter readings. It's through fillings. It's essentially documentary as far as establishing it or contesting it. Is that correct? Basically, yes, sir. Basically. You've got another case which has more historical aspects to it, a course of action, an alleged breach. It's more of a historical situation. It's going to require some discovery in that regard, isn't it? Yes. What's the rationale then of what is the rationale of limiting that counterclaim to an L.M. situation where discovery is limited when you've got a basic suit on an account that can be shown by documentary evidence and is likely to be resolved in a partial summary judgment, however long the other cause of action takes to resolve? What's the rationale of limiting it to an L.M. situation? That's, of course, a good question. But in that regard, I believe that that is Judge Bob's question to ask him. I believe it is his docket, and it was his authority given by the Supreme Court to decide whether they were going to proceed in two separate manners as opposed to one manner. And I can tell you that the arguments before him all had to do with being held back and being required to do discovery that would not be necessary, would be unnecessary for the action on the account. There had already been in the L case, I've got a file three, four inches thick of discovery that had already been presented in the L case before it was voluntarily dismissed. So in that regard, that case was proceeding, and in my opinion, the move to the L.M. case was merely for the sake to slow it down. And so I believe Judge Vaughn made the best decision in this action, which was to allow the two cases to go ahead separately. What's our standard of review there, Mr. Sanders? Mr. Wilson says it's de novo because it's a question of law. He's right. Well, or is it an issue of whether Judge Vaughn engaged in an abuse of discretion? Ah. Because I hear you arguing, you know, pretty much it was up to the circuit judge to make this decision. No, I believe it's de novo. And the reason I say that is because, yes, there is authority that's given. But if there has been, in a de novo review, if there has been an abuse or even just a misinterpretation of that authority, misinterpretation of that authority, misinterpretation of the statute, then I believe that certainly it's within this Court to say, no, Judge Vaughn, you misinterpreted. Because of the interplay of the Supreme Court rule and the counterclaim rule, you just, you know, you have no authority. It is, in fact, a matter of law that every held-end case where there's a counterclaim, where there's a counterclaim for more than $50,000 must be redacted. And I believe that's what the city assessor is asking you to do, is to tell all circuit judges in the state of Illinois, it's a hard and fast rule. We've interpreted the interplay between the Supreme Court rules and the Code of Civil Procedure, and it's our belief that it's a hard and fast rule. Once there is a counterclaim for more than $50,000, it must be redacted. And that's your choice, I believe, to do under de novo review. What happens, let's say you file an LM and it's a personal injury case, auto accident, and you file it as an LM and you go to the jury, and for whatever reason the jury gives you $60,000. Are there any cases like that? Well, you know, I didn't look for them. Does the plaintiff not get the money because they filed as an LM? If I'm not mistaken, I think that's relatively fair, that, yes, there is a limit of $50,000. And I think that's why I didn't look, and certainly it wasn't the situation here, but I do believe that is set forth. You know, I stand to be corrected, but very, very simply, that is what I understand the situation to be. Thank you. Thank you, Mr. Sanders. Any rebuttal, Mr. Wilson? Let me ask you the same question. In the research you've done, did you look at any cases where, you know, there was an award of damages exceeding the $50,000 limit? Yes, we did. And in those cases, the appellate court ruled that in each case, if there was a failure to file a 222 affidavit that said that damages would exceed $50,000 and the jury brought in a verdict in excess of $50,000, then the judgment was limited to that $50,000. In this case, I want to reiterate that city assessor filed an affidavit with the county claim that said the damages claimed exceed $50,000. Now, is there a further question on that, Your Honor? No. Okay. What we're really talking about here is they say we owe them $32,000. We say they owe us $200,000. We think it's just inherently wrong for them to get judgment on that $32,000 and proceed with enforcement of the judgment when at the same time they owe us $200,000, at least that's our claim. There's $168,000 worth of difference here, and I hear and feel Mr. Sanders' pain about the concept that it will take longer if this is redacted. There will be more discovery if this is redacted, that if this court recognizes that the affidavit attached to the county claim takes it out of the $50,000 limitation, then this case is going to take a longer period of time. But the alternative is the possibility of manifest injustice if it really is a judgment and proceeds to collect on that judgment while the Elk Lake case, which admittedly takes longer to process, has different discovery rules, and has a jury plan, continues down the path. It's an unusual instance. Two things that Mr. Sanders cited that aren't in the record. First of all, it's not true, and there's nowhere in the record that indicates that the second motion to redoct it was presented as uncontested. What actually happened was we filed it. The judge signed it while Mr. Sanders had a 12615 motion in the mail, and the timing was such that Mr. Sanders had filed timely. But that's just not true. The second thing is that Mr. Sanders indicates that there's $32,000 owed. In fact, Red Lake is asking their bills claiming Sessor has underpaid some $85,000. Well, if this court limits Sessor's damages, then we've got a situation where they sued the first case for $32,000. I don't like suing on so many months' worth of rent. They have sued on so many months' worth of water bills. And then they get to come back after this case is over and sue for the other $53,000. And they get two bites at the end. In fact, when they sue the next time, they can sue again as an LN case and sue for less than $50,000. In fact, Sessor could file—I'm sorry, Red Lake could file a lawsuit based upon every month's water bill as a separate lawsuit and conceivably have this held under the small claims limitation of $10,000, which robs the city of Sessor of ever effectively being able to file a counterclaim. We just don't think that it's just. That it just shouldn't be the law. Okay. Thank you, Mr. Wilson. Thank you. All right, we'll take this matter under advisement and issue a decision in due course.